JOHN C. DOUGHERTY *v.* YAZOO & MISSISSIPPI VALLEY RAIL-
ROAD COMPANY.

1. RAILROADS. *Passengers. Falling from train. Negligence.*

> It is negligence for a passenger to voluntarily attempt to pass
> from one car to another while the train is running at a rapid
> rate of speed around a curve.

2. SAME. *Coercion.*

> If a passenger by coercion or direction of the railroad servants
> attempt to pass from one car to another of a train while run-
> ning at a rapid rate around a curve and fall from the train, the
> question of his negligence is for the jury.

FROM the circuit court of Jefferson county.

HON. JEFF TRULY, Judge.

Dougherty, appellant, was plaintiff, and the Yazoo & Missis-
sippi Valley Railroad Company, appellee, and another were
defendants in the court below. From a judgment in defendants'
favor the plaintiff appealed to the supreme court.

The suit was not only against the railroad company, but was
against the Pullman Company (a sleeping car company) as
well. On the application of the Pullman Company the case
was removed to the United States circuit court at Jackson,
which decided the case against the plaintiff and in favor of both
defendants. The plaintiff then appealed to the United States
circuit court of appeals, fifth circuit, at New Orleans, which
court reversed the judgment of the United States circuit court
on the ground that the cause was not a removable one, and
directed that the case be remanded to the state circuit court.
See *Dougherty* v. *Yazoo & Miss. Val. R. R. Co.,* 122 Fed., 205.

When the case was returned to the circuit court of Jefferson
county it was dismissed as to the Pullman Company.

The facts as disclosed by plaintiff's evidence are as follows:
Plaintiff was in New Orleans, La., and desired to go to Vicks-

burg, Miss.  On February 5, 1898, he bought a railroad ticket, and took passage on defendant's train in the afternoon of that day; and, in order to avoid paying the full fare of $2 for sleeping car accommodations to Vicksburg, he and a companion purchased such accommodations to Harriston, a station between New Orleans and Vicksburg, and paid therefor $1, and proposed to then go into the day coach for the remainder of the trip.  Soon after the train started, the sleeping car porter brought pillows to plaintiff and his companion, saying: "Perhaps you gentlemen would like to have a little nap."  Plaintiff himself testified that some time during the night (probably about 10 o'clock) he was aroused by the porter, who said something about transferring, and at the same time informed him that they had passed Harriston; that he picked up his satchels, and they started forward (he in front, the porter next, and his companion behind); that they passed out of the sleeping car and through another sleeping car; that the train was going fast, and swaying or lurching from side to side; that this was caused by the high rate of speed of the train and running over a track which had a short curve and was rough; that when he reached the platform of the passenger car he was thrown off by a sudden movement of the train, and received the injuries complained of.  The opinion of the court contains a further statement of the evidence.

The assignment of error urged the refusal of an instruction asked by plaintiff, which is as follows:

"If from the evidence the jury believe that after passing Harriston the porter of the Pullman Company, while the train was in motion, requested or directed plaintiff to go forward to a day coach, and that by reason of the curve in the track of the road at that place, and the rate of speed at which the train was then running, the swaying and lurching of the train caused thereby made the attempt on part of plaintiff dangerous, and that such danger was known or ought to have been known to said porter, and that plaintiff was thrown from said car by the

violent motion, swaying, or jerking of said train, caused by said rate of speed over said curve, and that the plaintiff acted with reasonable care and prudence, and as an ordinarily prudent man would have done under the circumstances—then the jury should find for the plaintiff."

Plaintiff objected to the giving of the following instructions for the defendant:

"That a passenger on a railroad train, when he passes from car to car, under ordinary circumstances, when the train is in motion, takes the ordinary risk that may attend the act; and if, in so doing, he is hurt, he must show, in order to recover, that his injury resulted from some act of negligence on the part of the defendant."

"That although the jury may believe from the evidence that the plaintiff was thrown from the platform of defendant's train by the swaying or lurching of the train, yet, if you further believe from the evidence that this swaying or lurching was not due to the defective condition of the track, nor to the dangerous rate of speed, if such has been proven, you should find for the defendant."

"That, before plaintiff can recover a verdict in this case, he must show by a preponderance of the evidence that the cause of his being thrown from the train was due to the defective or unsafe condition of the defendant's track, or from the train being run at a dangerous rate of speed."

*Magruder, Bryson & Dabney,* for appellant.

We lay down the proposition that not a single case has been decided which holds, as a matter of law, that it is negligence for a passenger to go from one car to another while in motion to find a seat in pursuance of the directions of the company's servants. On the other hand, in every case where it appeared the attempt was made upon the suggestion, or order, of the servant of the company, it was decided to be a question of fact for the jury. That in the very few cases which have held such

an attempt to be negligence, it was put upon the express ground, in each case, that it was "voluntary" and "without inducement," "direction," "occasion," or "necessity." *Leftwich* v. *St. L. R. R. Co.,* 117 Fed. Rep., 127; *Northern Pacific Railway Co.* v. *Adams,* 116 Fed. Rep., 330; *Railroad Co.* v. *Powers,* 149 U. S., 43 (Sup. Ct., 748; 37 L. ed., 642); *Bronson* v. *Oaks,* 76 Fed. Rep., 334; *B. & O. R. R. Co.* v. *Myers,* 49 Fed. Rep.; *Davis* v. *Railway Co.,* 69 Miss., 137; *McIntyre* v. *N. Y. Railway Co.,* 37 N. Y., 287; *McAfee* v. *Hindekaper,* D. C. App., 34 L. R. A., 720; *Stewart* v. *B. & P. R. Co.,* 146 Mass., 605; *Hickey* v. *R. R. Co.,* 14 Allen, 96 Mass., 429; *Dewire* v. *B. & M. R. R. Co.,* 148 Mass., 343 (2 L. R. A., 2); *L. & N. R. R. Co.* v. *Kelly,* 92 Ind., 371 (47 Am. Rep., 149); *Pool* v. *Chicago, Etc., R. W. Co.,* 56 Wis., 227; *Filer* v. *New York, Etc., R. R. Co.,* 59 N. Y., 351; *Filer* v. *New York, Etc., R. R. Co.,* 49 N. Y., 47; *Penn. R. R. Co.* v. *McCloskey,* 23 Pa. St., 526; *Lake Erie, Etc., R. W. Co.* v. *Fix,* 88 Ind., 381 (45 Am. Rep., 464); *Nave* v. *Flack,* 90 Ind., 205; *Pennsylvania Co.* v. *Hoagland,* 78 Ind., 203; *Chesapeake R. R. Co.* v. *Clowes,* 93 Va., 189; *Jamison* v. *Chesapeake & O. Ry. Co.,* 92 Va.; *Werle* v. *Long I. R. R.,* 98 N. Y., 650; *Willis* v. *Long I. R. R. Co.,* 34 N. Y., 670; *Sampson* v. *Railroad Co.,* 111 Fed. Rep., 887; *Cochet* v. *S. & T. R. Co.,* 84 Ga., 687; *Oliver* v. *L. & N. R. R.,* 43 La., 804; *Galveston R. R. Co.* v. *Morris,* 61 S. W., 709; *Sawtelle* v. *U. S. Insurance Co.,* 15 Blatchf.; *Worthington* v. *Central R. R.,* 15 L. R. A., 331; *Schenider* v. *Prov. Life Ins. Co.,* 24 Wis., 28; *Turnbull* v. *Erickson,* 97 Fed. Rep., 829; *McDaniel* v. *R. R. Co.,* 90 Ala., 67; *Bosworth* v. *Walker,* 83 Fed. Rep., 58.

The foregoing cases may be classified as follows:

1. Those which hold that it is negligence *per se* to pass from one car to another of a moving train, voluntarily, without inducement, direction, or necessity.

2. Those which hold that the passing from one car to another of a moving train is not negligence *per se,* when done for some

reason, inducement, or from direction, or necessity, such as going for a drink of water, to look for a seat, to find a seat when directed by a conductor, to go from a smoking car to find one's wife, to go from a dining car to a regular coach.

3. Those which have held that it is never negligence *per se* to pass from one car to another, whether with or without special reason, inducement, or direction, but always a question for the jury.

4. Every one of the foregoing cases is authority for the general proposition that the passing from one car to another of a moving train is not negligence *per se* when done upon some sufficient inducement, direction, or necessity, and in every case where contributory negligence was sought to be imputed to the passenger because of passing from one car to another in order to find a seat, the question has been submitted to a jury, and courts have held that it is not negligence *per se* and *a fortiori* if the attempt was made under the direction of the conductor or some one in authority.

The testimony shows conclusively that appellant acted under the direction of defendant's employes and servants, and the instructions given defendant were erroneous, and those refused plaintiff were correct and their refusal reversible error.

*Mayes & Longstreet,* and *J. M. Dickinson,* for appellee, railroad company.

There was no evidence whatever that the porter either directed or compelled the plaintiff to leave the car. On the contrary, he says he did not go unwillingly; and his whole testimony, together with that of Mr. Lea, shows that they both recognized that their contract with the Pullman Company was at an end, and voluntarily and cheerfully proceeded to go forward to the day coach. The plaintiff complains that he was not informed of the arrival of the train at Harriston, where his right to sit in the sleeper expired, but he shows that neither the conductor nor the porter agreed to rouse him at Harriston; that

the train stopped at Harriston, and that other passengers on the sleeper, whose destination was Harriston, got off at that place. He seems to think that because of the courtesy of the porter in giving him a pillow and his remark that perhaps he would like to take a little nap, which was outside of his duty to one who contracted for a seat only, the servants of this defendant were under special obligation to arouse him when he reached Harriston, which was so far away that he might have taken a number of little naps before reaching it. The plaintiff's allegation of an agreement to awaken him at Harriston was wholly unsustained by evidence, and it will be noticed that the plaintiff was unable to testify that the porter did not call him at Harriston, when other passengers in the same car, destined for that place, along with whom he must have been called, left the train without difficulty. He says that if he was called he did not hear the porter, being asleep; but it is manifest that there was no lack of information as to the whereabouts of the train on the part of any one except Lea and himself, who had both abandoned themselves to slumber after the manner of those who pay for full sleeping car accommodation and are entitled to special attention on account of such payment, and who are, moreover, until called, shut in by the curtains of their berths, and their clothing to some extent removed. *Sevier* v. *Vicksburg R. R. Co.,* 61 Miss., 8; *Murdoch* v. *Railroad,* 77 Miss., 487.

It is a dictate of pure common sense, according with the observation and experience of every reasonable man, and it is the law, that to pass from one car to another, in the night time, and on a train which is moving at a high rate of speed, and on a section of track which is known to be rough and abounding in short curves, is negligence; and it is negligence as matter of law. *Sawtelle* v. *Insurance Co.,* 15 Blatchf., 216; *Bemis* v. *R. R. Co.,* 47 La. Ann., 1671; *McDaniel* v. *R. R. Co.,* 90 Ala., 64; *Stewart* v. *R. R. Co.,* 146 Mass., 605; *Hickey* v. *R. R. Co.,* 14 Allen, 429; *Worthington* v. *R. R. Co.,* 64 Vt., 107; *Good-*

*win* v. *R. R. Co.,* 84 Me., 203; *Hicks* v. *Ry. Co.,* 14 Am. &
Eng. R. Cases (N. S.), 279; *Augusta R. R. Co.* v. *Snider*
(Ga.), 44 S. E., 1005; *Bronson* v. *Oaks,* 76 Fed., 734; *Aufden-
berg* v. *R. R. Co.,* 132 Mo., 565; *Third Avenue Co.* v. *Barton,*
107 Fed. Rep., 215; *R. R. Co.* v. *Jones,* 95 U. S., 439.

Argued orally by *J. C. Bryson,* for appellant.

CALHOON, J., delivered the opinion of the court.

We find no evidence in this record to sustain a verdict on any
contention that, at the time of the sad accident to Mr. Dough-
erty, the railroad tracks were defective or out of repair, or
that the train was running at a dangerous rate of speed.    If
there was such evidence, these matters were submitted to the
jury, and their verdict is controlling in this case.

Mr. Dougherty was thrown from the train in trying to pass
from one car to another, in the night time, while the train was
running on a three-degree curve at a rate of speed of forty-five or
fifty miles an hour.    The misfortune arose from the swaying
or lurching of the cars produced by the rapid movement on this
curve.    If the act of appellant in going from one car to another,
under all the circumstances, was voluntary, we think it clear
that the accident was the result of his own negligence, and that
the law gives him no right to recover damages.    If, however,
his act was on the coercion of the company's employes, or by
their actual direction, the question of his negligence should
have been left to the jury on all the evidence.    Clearly, there
was no coercion, and the only inquiry left is to see if there is
such evidence of direction as would warrant the court in sus-
taining a verdict if returned for plaintiff below on that.    We
do not find any such evidence.    On the contrary, from the
very frank and manly testimony of Mr. Dougherty himself,
the conclusion is irresistible that his action was entirely vol-
untary.    There was no order, no command, no coercion, no dis-
courtesy.    He himself, without demur, protest, or suggestion

of delay until the train should stop, led the way; the Pullman car negro porter being behind him with the satchels, and his friend and companion bringing up the rear.

*Affirmed.*